**HASBANI & LIGHT, P.C.**
450 Seventh Avenue, Ste 1408
New York, New York 10123
(212) 643-6677
Rafi Hasbani, Esq.
*Counsel for Plaintiff Blue Castle (Cayman) Ltd.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BLUE CASTLE (CAYMAN) LTD.,

<b>COMPLAINT</b>

Plaintiff,

-against -

WICKAPOGUE 1, LLC, NICOLE GALLAGHER, MARK
GALLAGHER, HUGH BAUERS CONTRACTING, INC.,
TITLE, LLC, ST. ANDREWS CAPITAL, LLC, LISA
GROSSMAN, BRYAN GEFFEN, and "JOHN DOE #1"
through "JOHN DOE #20," the twenty names being fictitious
and unknown, the persons or parties intended being the tenants,
occupants, persons or corporations, if any, having or
claiming an interest upon the Property,

Defendants.

-------------------------------------------------------------------X

Plaintiff BLUE CASTLE (CAYMAN) LTD ("Plaintiff"), by and through its attorneys,

Hasbani & Light, P.C., as and for its Complaint (the "Complaint"), respectfully alleges upon

knowledge as to itself and its own acts and upon information and belief as to all other matters, as

follows:

<b><u>THE PARTIES</u></b>

1.      Plaintiff is a corporation organized under the laws of the Cayman Islands with a

principal place of business in Miami, Florida.

2.      Upon information and belief and at all times mentioned herein, defendant

WICKAPOGUE 1 LLC ("Borrower") was and is a domestic limited liability company, organized and existing under the laws of the State of New York, having an address at 11 Martha Place, Port Jefferson Station, New York 11776 and is made a defendant in this action because it is the maker of the Notes (defined below), the owner of record of the mortgaged premises located at 145 Wickapogue Road, Southampton, New York 11968 (District 0904, Section 020.00, Block 01.00, Lot 026.000 on the Tax Map of Suffolk County), as more fully described in Exhibit A to the Mortgages (the "Mortgaged Premises"), and the mortgagor under the Mortgages being foreclosed in this action.

3.  Upon information and belief and at all times mentioned herein, defendant NICOLE GALLAGHER was and is an individual having an address at 11 Martha Place, Port Jefferson Station, New York 11776 and is made a defendant in this action because she is a signatory of the Guaranty (defined below) wherein she unconditionally guaranteed the prompt payment and performance, when due, of all indebtedness or other obligations of Borrower due under the Loan (defined below) and the Loan Documents (defined below).

4.  Upon information and belief and at all times mentioned herein, defendant MARK GALLAGHER (together with NICOLE GALLAGHER, the "Guarantors," and each a "Guarantor") was and is an individual having an address at 11 Martha Place, Port Jefferson Station, New York 11776 and is made a defendant in this action because he is a signatory of the Guaranty (defined below) wherein he unconditionally guaranteed the prompt payment and performance, when due, of all indebtedness or other obligations of the Borrower due under the Loan (defined below) and the Loan Documents (defined below).

5.  Upon information and belief and at all times mentioned herein, defendant HUGH BAUERS CONTRACTING, INC. (the "Completion Guarantor") was and is a domestic

corporation, organized and existing under the laws of the State of New York, having an address at 1580 Lakeland Avenue, Suite A, Bohemia, New York 11716 and is made a defendant in this action because it is a signatory of the Guaranty of Completion (defined below) wherein it unconditionally guaranteed certain obligations of Borrower due in connection with the construction of Limited Improvements (defined below).

6.     Upon information and belief and at all times mentioned herein, defendant TITLE, LLC was and is a foreign limited liability company, organized and existing under the laws of the State of Alabama, having an address at 820 Shades Creek Parkway, Birmingham, Alabama 35209 and is made a defendant in this action because of possible claims or interest in possession or liens against the Mortgaged Premises by virtue of (i) a mortgage lien in the amount of $3,300,000.00, dated February 19, 2021 and recorded on March 9, 2021 with the Suffolk County Clerk at Liber M00023243, Page 842 as Mortgage Number DL060100, (ii) a certain money judgment in the amount of $715,225.00, entered against Borrower on February 23, 2021 in the Supreme Court of New York, County of Suffolk ("Suffolk Supreme Court") (Index No. 602958/2021); (iii) a certain money judgment in the amount of $885,225.00, entered against Borrower on February 23, 2021 in the Suffolk Supreme Court (Index No. 602965/2021); (iv) a certain money judgment in the amount of $3,200,225.00, entered against Borrower on November 8, 2021 in the Suffolk Supreme Court (Index No. 621010/2021) ; and (v) a certain money judgment in the amount of $500,225.00, entered against Borrower on November 8, 2021 in the Suffolk Supreme Court (Index No: 621011/2021).

7.     Upon information and belief and at all times mentioned herein, defendant ST. ANDREWS CAPITAL, LLC was and is a foreign limited liability company, organized and existing under the laws of the State of Delaware, having an address at 1209 Orange Street,

Wilmington, Delaware 19801 and is made a defendant in this action because of possible claims or interest in possession or liens against the Mortgaged Premises by virtue of a certain money judgment in the amount of $715,225.00, entered against Borrower on February 23, 2021 in the Suffolk Supreme Court (Index No. 602958/2021).

8.      Upon information and belief and at all times mentioned herein, defendant LISA GROSSMAN was and is an individual having an address at 33 West Hawthorne Avenue, Valley Stream, New York 11580 and is made a defendant in this action because of possible claims or interest in possession or liens against the Mortgaged Premises by virtue of (i) a certain money judgment in the amount of $1,600,000.00, entered against Borrower on August 19, 2021 in Suffolk Supreme Court (Index No. 615891/2021), and (ii) a certain money judgment in the amount of $500,000.00, entered against Borrower on November 23, 2021 in Suffolk Supreme Court (Index No. 621960/2021).

9.      Upon information and belief and at all times mentioned herein, defendant BRYAN GEFFEN was and is an individual having an address at 1555 Bell Boulevard, Bayside, New York 11360, and is made a defendant in this action because of possible claims or interest in possession or liens against the Mortgaged Premises by virtue of a certain money judgment in the amount of $600,210.00, entered against Borrower and in favor of Bryan Geffen on June 16, 2021 in the Suffolk Supreme Court (Index No. 611401/2021).

10.     Upon information and belief, "JOHN DOE #1" through "JOHN DOE #20" are fictitious names and unknown to the Plaintiff, and have been made defendants to this action because of they may have possession of, or may have contract, possessory, leasehold, lien or other claims or interests in the Mortgaged Premises.

## JURISDICTION AND VENUE

11.     This Action is between citizens of different states. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Therefore, jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

12.     Venue is deemed proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to this action took place within the jurisdiction of this court and the Property is located in this district.

## THE LOAN AND THE LOAN DOCUMENTS

13.     On or about February 7, 2020, 5 Arch Funding Corp. ("Original Noteholder") loaned Borrower the aggregate principal sum of up to FIVE MILLION SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($5,750,000.00) (the "Loan"), which is comprised of: (i) a loan in the original principal amount of $3,250,000.00 (the "Senior Loan"), and (ii) a building loan in the original principal amount of up to $2,500,000.00 (the "Building Loan").

14.     The Senior Loan is evidenced that certain Amended and Restated Mortgage Note, dated February 7, 2020, executed by Borrower, in favor of Original Noteholder, in the principal amount of $3,250,000.00 (the "Senior Loan Note").  A true and correct copy of the Senior Loan Note is annexed hereto as **Exhibit A**.

15.     The Building Loan is evidenced by that certain Amended and Restated Building Loan Mortgage Note, dated February 7, 2020, executed by Borrower in favor of Original Noteholder, in the principal amount of $2,500,000.00 (the "Building Loan Note" and, together with the Senior Loan Note, collectively, the "Notes").  A true and correct copy of the Building Loan Note is annexed hereto as **Exhibit B**.

16.     In connection with the Building Loan, Borrower and Original Noteholder entered

that certain Amended and Restated Building Loan Agreement, dated February 7, 2020 (the "Building Loan Agreement") and filed on February 19, 2020 with the Clerk of Suffolk County as Seq. No. LMIS00017137. A true and correct copy of the Building Loan Agreement is annexed hereto as **Exhibit C**.

17. The Senior Loan Note is secured by that certain Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases, made as of February 7, 2020, executed by Borrower in favor of Original Noteholder, encumbering the Mortgaged Premises (the "Senior Loan Mortgage") granting Original Noteholder, among other things, a first priority lien on the Mortgaged Premises and all fixtures, chattels and articles of personal property now or hereafter attached to or located in or upon the Mortgaged Premises, and used or usable in connection with any present or future operation or letting of the Mortgaged Premises or the activities at any time conducted therein (the "Collateral").

18. The Senior Loan Mortgage was duly recorded on September 29, 2020 with the Suffolk County Clerk Records Office (the "Clerk's Office") at Liber M00023178, Page 572, Mortgage Number DL028243. A true and correct copy of the Mortgage is annexed hereto as **Exhibit D**.

19. The Building Loan Note is secured by that certain Building Loan Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Lease, made as of February 7, 2020, executed by Borrower in favor of Original Noteholder, encumbering the Mortgaged Premises (the "Building Loan Mortgage" and, together with the Senior Loan Mortgage, collectively, the "Mortgages") and granting Original Noteholder, among other things, a lien on the Collateral.

20. The Building Loan Mortgage was duly recorded on September 29, 2020 with the

Suffolk County Clerk at Liber M00023178, Page 576, Mortgage Number DL028245. A true and correct copy of the Building Loan Mortgage is annexed hereto as **Exhibit E**.

21.     As further security for the Loan, Guarantors executed in favor of, and delivered to, Original Noteholder that certain Guaranty, dated February 7, 2020 (the "Guaranty") unconditionally guaranteeing the prompt payment and performance, when due, of all indebtedness or other obligations of the Borrower due under the Loan and the Loan Documents (defined below). A true and correct copy of the Guaranty is annexed hereto as **Exhibit F**.

22.     As further security for the Loan, Borrower and the Completion Guarantor executed in favor of, and delivered to, Original Noteholder that certain Guaranty of Completion dated effective as of February 7, 2020 (the "Completion Guaranty") unconditionally guaranteeing, when due, the prompt and complete payment and performance of the obligations of Borrower to construct and complete the Limited Improvements (defined therein) in accordance with the Construction Budget (defined therein) free and clear of all defects and liens and in compliance with all material respects with all applicable laws, until such time that Borrower delivers the Project Approvals (defined therein) and repayment of the outstanding principal amount of the Loan. A true and correct copy of the Completion Guaranty is annexed hereto as **Exhibit G**.

23.     In connection with the Loan, a UCC-1 Financing Statement, identifying Borrower as the debtor and Original Noteholder as secured party, was filed with the New York Secretary of State as Filing Number 202112170482501 (the "State UCC"). A true and correct copy of the State UCC is annexed hereto as **Exhibit H**.

24.     The Senior Loan Note, the Building Note, the Building Loan Agreement, the Senior Loan Mortgage, the Building Loan Mortgage, the Guaranty, the Completion Guaranty, the State UCC, together with all other documents or agreements executed and delivered to Original

Noteholder in connection with the Loan, are collectively referred to as the "Loan Documents."

## ASSIGNMENT OF THE LOAN AND THE LOAN DOCUMENTS

25.     On or about February 7, 2020, Original Noteholder assigned the Loan and Loan Documents to Redwood BPL Holdings, Inc. ("Redwood BPL"). In connection with the assignment to Redwood BPL, Original Noteholder executed and delivered to Redwood BPL the following documents:

a.   that certain Allonge to the Senior Loan Note executed by Original Noteholder in favor of Redwood BPL, a true and correct copy of which is annexed together with the Note as **Exhibit A**;

b.   that certain Allonge to the Building Loan Note executed by Original Noteholder in favor of Redwood BPL, a true and correct copy of which is annexed together with the Building Loan Note as **Exhibit B**;

c.   that certain Absolute Assignment of Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated effective as of February 7, 2020, and recorded on September 29, 2020 at Liber M00023178, Page 573, a true and correct copy of which is annexed hereto as **Exhibit I**;

d.   that certain Absolute Assignment of Building Loan Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated February 6, 2020 and effective as of February 7, 2020, and recorded on September 29, 2020 at Liber M00023178, Page 577, a true and correct copy of which is annexed hereto as **Exhibit J**; and

e.   that certain UCC-3 Financing Statement, assigning the State UCC to Redwood BPL, recorded at Filing Number 202203115402333, a true and correct copy of which is annexed hereto as **Exhibit K.**

26.     On or about April 27, 2020, Redwood BPL assigned the Loan and the Loan

Documents to CAF Bridge Borrower MS LLC. In connection with such assignment, Redwood

BPL executed and delivered to CAF Bridge Borrower MS LLC the following documents:

    a.   that certain Allonge to the Senior Loan Note executed by Redwood BPL in favor of CAF Bridge Borrower MS LLC, a true and correct copy of which is annexed together with the Note as **Exhibit A**;

    b.   that certain Allonge to the Building Loan Note executed by Redwood BPL in favor of CAF Bridge Borrower MS LLC, a true and correct copy of which is annexed together with the Building Loan Note as **Exhibit B**;

    c.   that certain Absolute Assignment of Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated April 27, 2020, and recorded on December 22, 2020 at Liber M00023211, Page 665, a true and correct copy of which is annexed hereto as **Exhibit L**;

    d.   that certain Absolute Assignment of Building Loan Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated April 27, 2020, and recorded on December 22, 2020 at Liber M00023211, Page 666, a true and correct copy of which is annexed hereto as **Exhibit M**; and

    e.   that certain UCC-3 Financing Statement, assigning the State UCC to CAF Bridge Borrower MS LLC, recorded at Filing Number 202203115403703, a true and correct copy of which is annexed hereto as **Exhibit N**.

27.    On or about July 13, 2020, CAF Bridge Borrower MS LLC assigned the Loan and

the Loan Documents to CAF BRIDGE BORROWER MS 2, LLC. In connection with the

assignment, CAF Bridge Borrower MS LLC executed and delivered to CAF BRIDGE

BORROWER MS 2, LLC the following documents:

    a.   that certain Allonge to the Senior Loan Note executed by CAF Bridge Borrower MS LLC in favor of CAF BRIDGE BORROWER MS 2, LLC, a true and correct copy of which is annexed together with the Note as **Exhibit A**;

    b.   that certain Allonge to the Building Loan Note executed by CAF Bridge Borrower MS LLC in favor of CAF BRIDGE BORROWER MS 2, LLC, a true and correct copy of which is annexed together with the Building

Loan Note as **Exhibit B**;

c.  that certain Absolute Assignment of Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated July 13, 2020, and submitted for recording, a true and correct copy of which is annexed hereto as **Exhibit O**;

d.  that certain Absolute Assignment of Building Loan Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated July 13, 2020, and submitted for recording, a true and correct copy of which is annexed hereto as **Exhibit P**; and

e.  that certain UCC-3 Financing Statement, assigning the State UCC to CAF BRIDGE BORROWER MS 2, LLC, recorded at Filing Number 202203115404135, a true and correct copy of which is annexed hereto as **Exhibit Q**.

28.  On or about June 10, 2022, CAF Bridge Borrower MS 2, LLC assigned the Loan and the Loan Documents to Redwood BPL Holdings 2, Inc. In connection with the assignment, CAF Bridge Borrower MS 2 LLC executed and delivered to Redwood BPL Holdings 2, Inc. the following documents:

a.  that certain Allonge to the Senior Loan Note executed by CAF Bridge Borrower MS 2 LLC in favor of Redwood BPL Holdings 2, Inc., a true and correct copy of which is annexed together with the Note as **Exhibit A**;

b.  that certain Allonge to the Building Loan Note executed by CAF Bridge Borrower MS 2 LLC in favor of Redwood BPL Holdings 2, Inc., a true and correct copy of which is annexed together with the Building Loan Note as **Exhibit B**;

c.  that certain Absolute Assignment of Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated June 10, 2022, and submitted for recording, a true and correct copy of which is annexed hereto as **Exhibit R**;

d.  that certain Absolute Assignment of Building Loan Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and

Assignment of Rents and Leases and Loan Documents, dated June 10, 2022, and submitted for recording, a true and correct copy of which is annexed hereto as **Exhibit S**; and

29.    On or about June 10, 2022, Redwood BPL Holdings 2 Inc., assigned the Loan and the Loan Documents to Plaintiff.  In connection with the assignment, Redwood BPL Holdings 2, Inc. executed and delivered to Plaintiff the following documents:

a.    that certain Allonge to the Senior Loan Note executed by Redwood BPL Holdings 2 Inc. in favor of Plaintiff, a true and correct copy of which is annexed together with the Note as **Exhibit A**;

b.    that certain Allonge to the Building Loan Note executed by Redwood BPL Holdings 2 Inc. in favor of Plaintiff, a true and correct copy of which is annexed together with the Building Loan Note as **Exhibit B**;

c.    that certain Absolute Assignment of Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated June 10, 2022, and submitted for recording, a true and correct copy of which is annexed hereto as **Exhibit T**;

d.    that certain Absolute Assignment of Building Loan Mortgage Extension, Consolidation and Modification Agreement, Security Agreement and Assignment of Rents and Leases and Loan Documents, dated June 10, 2022, and submitted for recording, a true and correct copy of which is annexed hereto as **Exhibit U**; and

30.    As a result of the foregoing allonges and assignments, Plaintiff is the owner, holder, and assignee of the Notes, the Mortgages, as well as the other Loan Documents.

## MODIFICATION OF THE LOAN

31.    On or about February 23, 2021, Borrower and Plaintiff executed a Loan Modification Agreement (the "Loan Modification Agreement") pursuant to which, among other things, the maturity date of the Loan was extended to October 1, 2021 (the "Maturity Date").  A true and correct copy of the Loan Modification Agreement is annexed hereto as **Exhibit V**.

32.     In executing the Loan Modification Agreement, Borrower, Guarantors, and Completion Guarantor ratified, confirmed, affirmed, and reaffirmed Borrower's obligations owing under the Loan Documents, Guarantors' obligations owing under the Guaranty, and Completion Guarantor's obligations owing under the Completion Guaranty.

33.     Borrower, Guarantors, and Completion Guarantor acknowledged that Borrower's obligation to repay the entire principal balance, all accrued interest, unpaid interest, and other amounts payable under the Loan are absolute and unconditional, and that there exists no right of set off, defense, claim, or any other cause of action.

34.     Borrower also acknowledged that the liens and security interests of the Loan Documents are valid, subsisting, and enforceable liens and security interests and are superior to all liens and security interest other than those exceptions approved in writing, if any.

35.     During the term of the extension of the Maturity Date, no additional amounts were requested or funded pursuant to the Loan Documents.

## BORROWER'S DEFAULTS UNDER THE LOAN AND LOAN DOCUMENTS

### A.     Failure to Pay on the Maturity Date

34.     Pursuant to the Loan Documents, Borrower was obligated to pay all sums due and owing under the Loan Documents, including but not limited to, principal, interest, costs and expenses (the "Indebtedness"), in full on the Maturity Date.

35.     Section 4 of the Senior Loan Mortgage and the Building Loan Mortgage provides that if the Indebtedness is not paid on the Maturity Date, interest thereon shall be computed and paid at the rate of 24% per annum (the "Default Rate"), calculated on the basis of a 360-day year and paid for the actual number of days elapsed until the entire Indebtedness is repaid in full.

36. On October 1, 2021, Borrower failed to pay the Indebtedness.

37. By notice dated February 28, 2022, (the "Notice of Maturity, Additional Defaults and Demand to Cure"), Borrower, Guarantors, and Completion Guarantor were notified that: (i) the Loan matured on October 1, 2021, (ii) Borrower's failure to timely pay the Indebtedness constituted a default under the Loan Documents, and (iii) interest on the Indebtedness would accrue at the Default Rate. A true and correct copy of the Notice of Maturity, Additional Defaults and Demand to Cure is annexed hereto as **Exhibit W**.

38. Despite the Notice of Maturity, Additional Defaults, and Demand to Cure, Borrower has continuously failed to remit payment of the Indebtedness to Plaintiff.

39. Accordingly, Borrower is in default under the Loan Documents.

### B. Multiple Judgments Rendered Against Borrower and Guarantors

40. Section 18(n) of the Senior Loan Mortgage and the Building Loan Mortgage provides that the Indebtedness shall become due at the option of Plaintiff "if judgment for One Hundred Thousand ($100,000.00) Dollars or more shall be rendered against [Borrower] or a Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from the entry thereof."

41. Since February 2021, Borrower has allowed multiple judgments of more than $100,000.00 to be rendered against both Borrower and Nicole Gallagher:

      a. Judgment by Confession in the amount of $715,225.00 entered against Borrower in favor of St. Andrews Capital LLC and Title LLC on February 23, 2021 in action bearing Index No. 602958/2021 (Suffolk Supreme Court);

      b. Judgment by Confession in the amount of $885,225.00 entered against Borrower in favor of Title LLC on February 23, 2021 in action bearing Index No. 602965/2021 (Suffolk

Supreme Court);

c. Judgment by Confession in the amount of $3,200,225.00 entered against Borrower in favor of Title LLC on November 8, 2021 in action bearing Index No. 621010/2021 (Suffolk Supreme Court);

d. Judgment by Confession in the amount of $500,225.00 entered against Borrower in favor of Title LLC on November 8, 2021 in action bearing Index No. 621011/2021 (Suffolk Supreme Court);

e. Judgment by Confession in the amount of $500,000.00 entered against Borrower and Nicole Gallagher in favor of Lisa Grossman on November 23, 2021 in action bearing Index No. 621960/2021 (Suffolk Supreme Court);

f. Judgment by Confession in the amount of $1,600,000.00 entered against Borrower in favor of Lisa Grossman on August 19, 2021 in action bearing Index No. 615891/2021 (Suffolk Supreme Court); and

g. Judgment by Confession in the amount of $600,210.00 entered against Borrower in favor of Bryan Geffen on June 16, 2021 in action bearing Index No. 611401/2021 (Suffolk Supreme Court).

42. These judgments were not discharged or bonded within 30 days of entry.

43. These judgments continue to exist against Borrower and/or Nicole Gallagher.

44. In its Notice of Maturity, Additional Defaults, and Demand to Cure, Borrower and Guarantors were notified that they are in default under the Loan Documents based on the docketed judgments detailed above.

**C.     Additional Mortgage Lien Existing Against the Mortgaged Premises**

45. On or around February 19, 2021, Borrower executed a mortgage in favor of defendant Title LLC, made as of February 19, 2021 and recorded on March 9, 2021 with the Suffolk County Clerk at Liber M00023243, Page 842, Mortgage Number DL060100, against the Mortgaged Premises securing payment of indebtedness in the sum of $3,300,000.00 (the

"Subordinate Mortgage").

46.     Section 13 of the Subordinate Mortgage provides that Borrower assigns to Title LLC "the rents, issues and profits of the premises as further security," which collateral was already assigned to Plaintiff and its predecessors-in-interest under the Senior Loan Mortgage and the Building Loan Mortgage.

47.     Pursuant to Section 18(p)(iv) of the Senior Loan Mortgage and Building Loan Mortgage, the whole of said principal sum and the interest shall become due at the option of the Mortgagee "if, without the prior consent of the Mortgagee, … any mortgage lien other than the lien of this Mortgage shall be placed on the Premises."

48.     Pursuant to the Notice of Maturity, Additional Defaults, and Demand to Cure, Borrower and Guarantors were notified that they are in further default under the Loan Documents by reason of the Subordinate Mortgage.

**D.      Tax Liens Against Guarantors**

49.     Section 18(o) of the Senior Loan Mortgage and the Building Loan Mortgage provides that the Indebtedness shall become due at the option of Plaintiff "if any representation, warranty, or statement contained [therein] or in any writing delivered to the Mortgagee simultaneously with the execution and delivery hereof, shall prove to be incorrect in any material respect."

50.     The Guaranty was delivered to Original Lender simultaneously with the execution and delivery of the Senior Loan Mortgage and the Building Loan Mortgage.

51.     In the Guaranty, Guarantors represented and warranted as follows:

> Guarantor has filed or caused to be filed all federal, state, and local tax returns that are required to be filed, and has paid or has caused to be paid all of its taxes,

including any taxes shown on such returns or on any assessment received by it, to the extent that such taxes have become due.

52.     However, at the time of entering into the Guaranty, Guarantors had failed to pay the necessary federal and state taxes due and owing, resulting in tax liens as follows:

    a.  Federal tax lien, in the amount of $96,714.17 entered against Guarantors on September 26, 2008 and recorded with the Suffolk County Clerk on October 7, 2008 as Lien Number LFED00003006;

    b.  Federal tax lien in the amount of $2,474.81 entered against Guarantors on September 26, 2012 and recorded with the Suffolk County Clerk on October 10, 2012 as Lien Number LFED00016387;

    c.  State tax lien in the amount of $3,057.97 entered against Guarantors on November 23, 2009 and recorded with the Suffolk County Clerk on December 3, 2009 as Sequence Number 344;

    d.  State tax lien in the amount of $359.17 entered against Guarantors on October 11, 2011 and recorded with the Suffolk County Clerk on October 21, 2011 as Sequence Number 875;

    e.  State tax lien in the amount of $1,233.10 entered against Guarantors on January 22, 2013 and recorded with the Suffolk County Clerk on February 1, 2013 as Sequence number 971.

53.     As a result, Guarantors' representation and warranty that they paid all of their taxes was materially incorrect.

54.     Pursuant to the Notice of Maturity, Additional Defaults, and Demand to Cure, Borrower and Guarantors were notified that they are in further default under the Loan Documents based on these misrepresentations.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Foreclosure of Building Loan Mortgage)

55.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

56.     Borrower has failed to comply with the terms and provisions of the Loan

Documents by, among other things, its failure to pay the amounts due under the Loan Documents when due, and upon maturity on October 1, 2021 (the "Events of Default").

57.     By reason of the foregoing, Borrower is in default under the Loan Documents.

58.     Borrower has failed to cure its defaults despite due demand in writing.

59.     Plaintiff, by reason of the Events of Default, elects that the whole unpaid principal sums due under the Building Loan Mortgage, together with all accrued interest late charges, default interest, loan collection costs, and any other amounts due under the Loan Documents, including reasonable attorneys' fees, costs, and disbursements, shall now be due.

60.     As of the date hereof, the total outstanding principal balance is $2,049,218.86 under the Building Loan Note, which amount does not include accrued interest, late charges, default interest, loan collection costs, attorneys' fees and costs.

61.     Any interest or lien upon the upon the Mortgaged Premises held or claimed by any Defendant is subject to and junior in priority to the lien of Plaintiff's Building Loan Mortgage.

62.     Pursuant to the terms of the Building Loan Mortgage, Plaintiff reserved the right to pay taxes and other liens affecting the Mortgaged Premises that could be superior to the lien of the Building Loan Mortgage, and which, when paid by the Plaintiff, together with interest thereon, are to be added to the amounts due and secured by the Building Loan Mortgage.  Plaintiff may be required to pay such liens during the pendency of this action and, if made, Plaintiff will demand that such payments be added to the debt due under the Loan Documents.

63.     Pursuant to the Loan Documents, Borrower must pay Plaintiff's reasonable attorneys' fees expended to foreclose the Mortgaged Premises.

64.     Plaintiff has complied with all the terms and provisions of the Loan Documents.

65.     In order to protect its security interest in the Mortgaged Premises, Plaintiff, as it is

entitled but not required to do under the Loan Documents, may be compelled to pay, during the pendency of this action, local taxes, assessments, water rates, insurance premiums, and other charges affecting the Mortgaged Premises, and any sums thus paid by Plaintiff for such purposes, together with late payments due thereon, should be added to the sums otherwise due and deemed secured by the Building Loan Mortgage and adjudged a lien.

66. No proceeding other than this action has been commenced to recover the debt secured by the Building Loan Mortgage owed to Plaintiff.

67. Upon information and belief, each and all of the Defendants herein have or claim to have some interest in, or lien upon, the Mortgaged Premises or some part thereof, which interest or lien, if any, has accrued after the lien of the Building Loan Mortgage and is subordinate thereto.

68. In the event that Plaintiff possesses any other lien(s) against said Mortgaged Premises other than the Building Loan Mortgage and the Senior Mortgage, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek or proceeding(s), including, without limitation, any surplus money proceedings.

69. Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents, and occurring prior to the discontinuance of this action, are fully paid.

70. Plaintiff seeks to foreclose upon the Building Loan Mortgage and recover the outstanding principal amount of $2,049,218.86, together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including

costs and attorneys' fees and that Borrower be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Actions and Proceedings Law.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Foreclosure of Senior Loan Mortgage)**

71.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

72.     Borrower has failed to comply with the terms and provisions of the Loan Documents by, among other things, its failure to pay the amounts due under the Loan Documents when due, and upon maturity on October 1, 2021 (the "Events of Default").

73.     By reason of the foregoing, Borrower is in default under the Loan Documents.

74.     Borrower has failed to cure its defaults despite due demand in writing.

75.     Plaintiff, by reason of the Events of Default, elects that the whole unpaid principal sums due under the Senior Loan Mortgage, together with all accrued interest late charges, default interest, loan collection costs, and any other amounts due under the Loan Documents, including reasonable attorneys' fees, costs, and disbursements, shall now be due.

76.     As of the date hereof, the total outstanding principal balance is $3,250,000.00 under the Senior Loan Note, which amount does not include accrued interest, late charges, default interest, loan collection costs, attorneys' fees and costs.

77.     Any interest or lien upon the upon the Mortgaged Premises held or claimed by any Defendant is subject to and junior in priority to the lien of Plaintiff's Senior Loan Mortgage.

78.     Pursuant to the terms of the Senior Loan Mortgage, Plaintiff reserved the right to

pay taxes and other liens affecting the Mortgaged Premises that could be superior to the lien of the Senior Loan Mortgage, and which, when paid by the Plaintiff, together with interest thereon, are to be added to the amounts due and secured by the Senior Loan Mortgage. Plaintiff may be required to pay such liens during the pendency of this action and, if made, Plaintiff will demand that such payments be added to the debt due under the Loan Documents.

79.     Pursuant to the Loan Documents, Borrower must pay Plaintiff's reasonable attorneys' fees expended to foreclose the Mortgaged Premises.

80.     Plaintiff has complied with all the terms and provisions of the Loan Documents.

81.     In order to protect its security interest in the Mortgaged Premises, Plaintiff, as it is entitled but not required to do under the Loan Documents, may be compelled to pay, during the pendency of this action, local taxes, assessments, water rates, insurance premiums, and other charges affecting the Mortgaged Premises, and any sums thus paid by Plaintiff for such purposes, together with late payments due thereon, should be added to the sums otherwise due and deemed secured by the Senior Loan Mortgage and adjudged a lien.

82.     No proceeding other than this action has been commenced to recover the debt secured by the Senior Loan Mortgage owed to Plaintiff.

83.     Upon information and belief, each and all of the Defendants herein have or claim to have some interest in, or lien upon, the Mortgaged Premises or some part thereof, which interest or lien, if any, has accrued after the lien of the Senior Loan Mortgage and is subordinate thereto.

84.     In the event that Plaintiff possesses any other lien(s) against said Mortgaged Premises, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek or proceeding(s), including, without limitation, any surplus money proceedings.

85. Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents, and occurring prior to the discontinuance of this action, are fully paid.

86. Plaintiff seeks to foreclose upon the Senior Loan Mortgage and recover the outstanding principal amount of $3,250,000.00 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees and that Borrower be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Actions and Proceedings Law.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Consolidation of Building Loan Mortgage and Senior Loan Mortgage for Foreclosure)**

87. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

88. The total aggregate outstanding principal balance of the Building Loan Mortgage and Senior Loan Mortgage is $5,299,218.86.

89. Plaintiff requests consolidation of Plaintiff's Building Loan Mortgage and Senior Loan Mortgage for the purpose of holding a single foreclosure sale.

90. The Building Loan Mortgage and Senior Loan Mortgage are contemporaneous instruments between the same parties and related and form part of one and the same loan

transaction.

91.     Plaintiff's foreclosure search reveals that there are no judgments or liens docketed between the dates that the Senior Loan Mortgage and Building Loan Mortgage were recorded.

92.     Plaintiff requests consolidation of Plaintiff's Senior Loan Mortgage and Building Loan Mortgage for the purpose holding a single foreclosure sale.

93.     Consolidation of Plaintiff's Senior Loan Mortgage and Building Loan Mortgage for the purpose holding a single foreclosure sale would not affect any potential judgment lien holders.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Alternative Relief for Successive Foreclosure Sales of the Building Loan Mortgage and Senior Loan Mortgage)**

94.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

95.     In the alternative, Plaintiff requests that a judgment be entered which expressly directs and authorizes a foreclosure sale of the Building Loan Mortgage, and then expressly directs and authorizes immediately thereafter a foreclosure sale auctioning the Mortgaged Premises pursuant to the Senior Loan Mortgage.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Breach of Guaranty)**

96.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

97.     Pursuant to the Guaranty, Guarantors guaranteed "absolutely and unconditionally the prompt payment and performance when due, whether at maturity, by declaration, by demand or otherwise, and at any and all times thereafter, of all indebtedness and other obligations of every kind and nature of the Borrower to Lender, direct or indirect, absolute or contingent, due or to become due, now or hereafter existing," including the Indebtedness.

98.     Pursuant to the Guaranty, Guarantors further agreed to pay Plaintiff immediately upon demand the full amount of the Indebtedness if, _inter alia_, a default occurs under any of the Loan Documents.

99.     The Guaranty provides that "[t]ime is of the essence in the performance of all obligations under this Guaranty."

100.    Guarantors have breached the Guaranty by, among other things, failing to pay the Indebtedness, including the entire principal, interest, and other amounts due under the Loan Documents, when same became due and owing.

101.    Guarantors have failed to cure their defaults despite due demand in writing.

102.    No proceeding other than this action has been commenced to recover the debt owed to Plaintiff under the Guaranty.

103.    Pursuant to the Guaranty and other Loan Documents, Guarantors are liable for all expenses, including reasonable attorneys' fees, legal costs and expenses, incurred or paid by Plaintiff in connection with the enforcement or preservation of its rights under the Guaranty or any other Loan Documents.

104.    Plaintiff has complied with all the terms and provisions of the Loan Documents.

105.    Accordingly, Plaintiff seeks to foreclose upon the Senior Loan Mortgage and the Building Loan Mortgage and recover the outstanding principal amount of $5,299,218.86 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees, and Guarantors should be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount

thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Completion Guaranty)

106.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

107.    Pursuant to the Completion Guaranty at Section 1(a), Borrower and Completion Guarantor "irrevocably and unconditionally guarantees to Lender the prompt payment and performance of the Guaranteed Obligation (as such term is hereinafter defined) as and when the same shall be due and payable, whether by lapse or time, by acceleration of maturity or otherwise."

108.    The Completion Guaranty defines 'the Guaranteed Obligation as (i) the prompt and complete payment and performance of the obligations of Borrower to construct and complete the Limited Improvements in accordance with the "Construction Budget" (as set forth in Exhibit B to the Completion Guaranty), free and clear of all defects and liens, other than Permitted Encumbrances (as such term is defined in the Senior Loan Mortgage) and in compliance in all material respects with all applicable laws, and (ii) until such time that Borrower shall have delivered to Lender the "Project Approvals" (as such term is defined in the Completion Guaranty) and repayment of the outstanding principal amount of the Loan.

109.    Upon information and belief, to date, the Limited Improvements have not been completed and Borrower has not delivered to Plaintiff the Project Approvals.

110.    Plaintiff also has not been provided a certificate of occupancy for the Mortgaged Premises.

111.    Borrower and Completion Guarantor have breached the Completion Guaranty by, inter alia, failing to ensure Borrower's construction and completion of the Limited Improvements

and failing to pay the outstanding principal amount of the Loan due from Borrower to Plaintiff.

112.    Borrower and Completion Guarantor have failed to cure its defaults despite due demand in writing.

113.    Plaintiff has complied with all the terms and provisions of the Loan Documents.

114.    No proceeding other than this action has been commenced to recover the debt owed to Plaintiff under the Completion Guaranty.

115.    As such, Borrower and Completion Guarantor are liable to Plaintiff, among other things, for the construction and completion of the Limited Improvements and repayment of the outstanding principal amount of the Loan.

116.    Accordingly, Plaintiff seeks to recover from Borrower and Completion Guarantor all amounts owing to Plaintiff pursuant to the terms of the Completion Guaranty'.


**WHEREFORE**, Plaintiff demands judgment as follows:

a.    That Plaintiff's Senior Loan Mortgage and Building Loan Mortgage be consolidated for the purpose of holding a single foreclosure sale;

b.    That, in the alternative, if Plaintiff's Senior Loan Mortgage and Building Loan Mortgage are not consolidated, that the Building Loan Mortgage be foreclosed first, and that another foreclosure sale take place immediately thereafter auctioning the Mortgaged Premises pursuant to the Senior Loan Mortgage;

c.    That all Defendants, and all persons claiming under them, be barred and forever foreclosed of all tight, title, lien, claim and equity of redemption in and to the Mortgaged Premises with all of its fixtures and the Collateral, except for the right of the United States of America and its political divisions, to be redeemed as provided by applicable law.

d.     That the Mortgaged Premises and Collateral be sold as to obtain the greatest return of sale, whether sold jointly as a single parcel or sold separately as two or more parcels;

e.     That the money raised from the sale of the Mortgaged Premises and Collateral be paid into Court and Plaintiff be paid first (i) the aggregate principal sum of $5,299,218.86 due and owing under the Loan Documents, with interest to the time of payment; (ii) late charges; (iii) all sums, including payment of taxes and other charges, which may be expended by plaintiff to protect its security interest in the Senior Loan Mortgage and the Building Loan Mortgage; (iv) reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action; and (v) any other amounts due under the Loan Documents;

f.     That Borrower, Guarantors, and Completion Guarantor be adjudged liable under the Loan Documents for all amounts of the debt remaining unsatisfied after the application of the proceeds of such sale pursuant to a judgment of foreclosure in accordance with RPAPL § 1371 to the extent provided under the Loan Documents and Guaranty;

g.     That Borrower and Completion Guarantor be adjudged liable under the Loan Documents for all amounts due under the Completion Guaranty;

h.     That Borrower, Guarantors, and Completion Guarantor be adjudged liable under the Loan Documents for reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

i.     That upon a separate application, Plaintiff shall be entitled to the appointment of a receiver of the rents and profits of the Mortgaged Premises;

j.     That the purchaser(s) of the Mortgaged Premises at such foreclosure sale be awarded a writ of possession and all other persons in possession of the premises be

evicted; and

k.    That Plaintiff be awarded such other and further relief as the Court may deem just and

proper.

Dated: September 12, 2022
New York, New York

By: */s/ Rafi Hasbani*
Rafi Hasbani, Esq.
*Attorneys for Plaintiff Blue Castle*
*(Cayman) Ltd.*
450 Seventh Avenue, Ste 1408
New York, New York 10123
rhasbani@hasbanilight.com
Tel: 212.643.6677