UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X 22-cv-05422-GRB-LGD
BLUE CASTLE (CAYMAN) LTD.,

Plaintiff,
-against -

WICKAPOGUE 1, LLC, NICOLE GALLAGHER,
MARK GALLAGHER,
HUGH BAUERS CONTRACTING, INC.,
TITLE, LLC, ST. ANDREWS CAPITAL, LLC,
LISA GROSSMAN, BRYAN GEFFEN, and
"JOHN DOE #1" through "JOHN DOE #20,"
the twenty names being fictitious and unknown,
the persons or parties intended being the tenants,
occupants, persons or corporations, if any,
having or claiming an interest upon the Property.

Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, WICKAPOGUE 1 LLC, MARK GALLAGEHR and NICOLE GALLAGHER's, ORDER TO SHOW CAUSE TO VACATE THEIR DEFAUL AND ENJOIN THE PLAINTIFF FROM REMOVING THE DEFENDANTS FROM THE SUBJECT PREMISES**

**Respectfully submitted by
Gordon & Gordon, P.C.**

/s/Supriya Kichloo, Esq
Supriya Kichloo, Esq
108-18 Queens Blvd., 6th Fl.,
Forest Hills, NY 11375
T: 718-544-7070
F: 718-544-0994
E: supriya.kichloo@gmail.com

**Table of Contents**

PRELIMINARY STATEMENT………………………………………………………………...1

STATEMENT OF FACTS…………………………………………………………………1-4

LEGAL ARGUMENT…………………………………………………………………...4-13

    A.  Legal Standard to  Vacate Entry of Default……………………………………….4-5

        a.  Wilfulness……………………………………………………………………5-6

        b.  Prejudice……………………………………………………………………..6-7

        c.  Meritorious Defense…………………………………………………………6-7

    B.  Criminal Usury…………………………………………………………………...7-12

    C.  Legal Standard for a Preliminary Injunction……………………………………12-13

CONCLUSION……………………………………………………………………………13-14

## Table of Authorities

**Cases**

*Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021) 179 N.E.3d 612, 157 N.Y.S.3d 800, 2021 N.Y. Slip Op. 05616 .............................................................................................................. 7
*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir.1996) .......................... 4
*Band Realty Co. v. North Brewster, Inc.*, 37 N.Y.2d 460, 462, 373 N.Y.S.2d 97, 335 N.E.2d 316 [1975]. ....................................................................................................................................... 9
*Blue Wolf Capital Fund II, L.P. v. American Stevedoring Inc.*, 105 A.D.3d 178 (2013) 961 N.Y.S.2d 86, 2013 N.Y. Slip Op. 01483. .................................................................................... 9
*Browne v. Vredenburgh*, 43 N.Y. 195, 198 [1870] ). ..................................................................... 9
*Chalasani v. Chalasani,* 92 F.3d 1300, 1307 (2d Cir.1996) ........................................................... 4
*Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995) ................................................................................. 5
*Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983) ........................................................................ 6
*Diehl v. Becker*, 227 N.Y. 318, 326, 125 N.E. 533 [1919] ............................................................ 9
*Emery v. Fishmarket Inn of Granite Springs*, 173 A.D.2d 765, 570 N.Y.S.2d 821, ...................... 9
*Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). ....................................................... 4
*Enron Oil,* 10 F.3d at 96 .................................................................................................................. 4
*Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry,* 158 F.3d 631, 634–35 (2d Cir.1998) . 5
*Hammelburger,* 54 N.Y.2d at 594, 446 N.Y.S.2d 917, 431 N.E.2d 278 ....................................... 10
*In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987) ................................................ 4
*Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 374 (D.C.Cir.1980) ............... 7
*Madden v. Midland Funding*, LLC, 237 F. Supp. 3d 130, 142 (S.D.N.Y. 2017) .......................... 11
*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2948 (2d ed. 1995) ) ................ 12
*Nextbridge Arc Fund, LLC v. Vadodra Prop*., LLC, 31 Misc.3d 1202(A), 929 N.Y.S.2d 201, 2011 WL 1124347, at *3 (Sup. Ct. Queens Cty. Mar. 11, 2011) ................................................... 11
*O'Donovan v. Galinski,* 62 A.D.3d 769, 769–770, 878 N.Y.S.2d 443 [2d Dept. 2009] ................ 9
*Park Ave. Owners Corp. v. Lapidus*, 227 A.D.2d 353, 643 N.Y.S.2d 89, 90 (1st Dep't 1996) ..... 10
*Schermerhorn v American Life Ins. & Trust Co., 14 Barb*. 131, 147 [N.Y. Sup. Ct. 1852], .......... 8
See *Emigrant Funding Corp. v. 7021 LLC*, 25 Misc.3d 1220(A), 901 N.Y.S.2d 906, 2009 WL 3530022, at *4 (Sup. Ct. Queens Cty. Oct. 26, 2009) .............................................................. 11
*Shah v. New York State Dept. of Civil Service,* 168 F.3d 610, 615 (2d Cir.1999 ........................... 5
*Stein v. Am. Mortg. Banking*, Ltd., 216 A.D.2d 458, 628 N.Y.S.2d 162, 164 (2d Dep't 1995); .... 11
*Time Warner Cable of N.Y. v. Cabada,* 1997 WL 797533, at *2 (E.D.N.Y.1997). ........................ 6
*Weisel v. Pischel,* 197 F.R.D. 231, 238–39 (E.D.N.Y. 2000). ....................................................... 7
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). ..................................................... 12

**Statutes**

Penal Law § 190.40 .......................................................................................................................... 7
Federal Rule of Civil Procedure 55(c) ............................................................................................ 4
General Obligations Law § 5–511(1) ........................................................................................... 11

**PRELIMINARY STATEMENT**

Plaintiff commenced the instant action against multiple defendants including, Wickapogue 1 LLC, Mark Gallagher and Nicole Gallagher ("Movants/Defendants") on or about 09/12/2022. A clerk's certificate of default was entered on 11/03/22 against the Movants but the plaintiff has not moved for a default judgment. The Defendants now bring this Order to Show Cause seeking to vacate the default and also a preliminary injunction restraining plaintiff, its counsel, affiliates, subsidiaries, or any entity or individual acting on its behalf, including Wickapogue Beach LLC from removing Mark Gallagher and Nicole Gallagher ("individual Defendants") from the subject property located at 145 Wickapogue Rd, Southampton, New York ("Subject Property") pending a resolution to this action.

The above Defendants have a meritorious defense as the interest rate used for the secured loan is above 25% and is thus criminally usurious, precluding the plaintiff from enforcing the transactions and vacating the default will not prejudice the Plaintiff since they have not moved for a final judgment of foreclosure and sale.

A preliminary injunction pursuant to FRCP Rule 65(b)(1) is sought since the movants received a letter dated March 29, 2023 in the afternoon stating that the Movants vacate the Subject Property by midnight on March 30, 2023 or the Plaintiff would seek an Order to remove the Defendants.

**STATEMENT OF FACTS**

Defendant, Wickapogue 1 LLC ("Borrower") executed an Amended and Restated Mortgage Note, in the principal amount of $3,250,000.00 ("Senior Loan") and an Amended and Restated Building Loan Mortgage Note, in the principal amount of $2,500,000.00 ("Building Loan") on February 7, 2020 in favor of 5 Arch Funding Corp, for an aggregate principal sum of

$5,750,000.00. Defendant, Mark Gallagher is a Guarantor on both loans and Nicole Gallagher is the managing member of the Borrower entity who also guaranteed both the loans.

On the same day, Nicole Gallagher also executed a Pledge Agreement wherein she pledged 100% of her membership interest in Wickapogue 1 LLC as a Guaranty for the Senior Loan and Building Loan.

Both the Senior Loan and the Building Loan required the Borrower to pay $115,000.00 as an 'exit fee' upon full payment of the principal or disposition of the property. See annexed hereto, *Exhibit A & B*, Article 5 Exit Fee.

On or about February 7, 2020, the Lender assigned the Senior loan, Building Loan, along with other Loan Documents to Redwood BPL Holdings, Inc. ("Redwood BPL"). On or about April 27, 2020, Redwood BPL further assigned the Loan and the Loan Documents to CAF Bridge Borrower MS LLC. On or about July 13, 2020, CAF Bridge Borrower MS LLC assigned the Loan and the Loan Documents to CAF BRIDGE BORROWER MS 2, LLC.

The Maturity Date for the Senior Loan was February 1, 2021 and the Maturity Date for the Building Loan was March 1, 2021. However, the Maturity Date for both loans was extended to October 1, 2021 upon the execution of a Loan Modification Agreement (LMA) dated February 23, 2021.

There were conditions precedent set forth in the LMA which needed to be met before the Lender, CAF Bridge Borrower MS 2, LLC agreed to extend the Maturity Date, one of which was that the Borrower would pay an extension fee in the amount of $53,992.19. The Borrowers were also required to waive any and all claims, demands, causes of action, obligations, damages, costs, penalties and liabilities of any nature against the Lender. See annexed hereto as *Exhibit D*.

On or about June 10, 2022, CAF Bridge Borrower MS 2, LLC assigned the Loan and the Loan Documents to Redwood BPL Holdings 2, Inc who then assigned the Loan and the Loan Documents to the Plaintiff in the instant action.

The Plaintiff commenced this action, amongst other things, seeking to foreclose on the senior loan, building loan and the LMA on or about September 12, 2022. See docket entry #1.

The Clerk entered a default against the Movants on November 3, 2022. See docket entry #10.

Plaintiffs moved by Order to Show Cause to appoint a receiver and George Cavales Esq., attorney for the defendants attempted to contact the Court on or about November 30, 2022. See docket entry #18.

Ultimately there was an Order appointing a receiver on January 9, 2023 and the Court appointed Richard Donoghue, Esq. of Pillsbury Winthrop Shaw Pittman LLP, as Temporary Receiver during the pendency of this action. See docket entry #26.

Movants retained the law firm of Gordon & Gordon, P.C. to represent them in this action and notices of appearance were filed on February 16, 2023. See docket entry # 31 and #32.

On March 28, 2023 plaintiff filed a letter stating that Wickapogue 1 LLC filed for chapter 11 bankruptcy pursuant to chapter 11 of the United States Bankruptcy Code. See docket entry #44.

According to the documents filed in the bankruptcy action, Wickapogue Beach LLC bought 100% of the membership interest of Wickapogue 1 LLC during an auction held on February 17, 2023 and subsequently filed for bankruptcy.

There was an initial in-person conference held in this matter on March 29, 2023 in front of Magistrate Judge Dunst. See docket entry #46.

On March 29, 2023, counsel for moving defendants received a letter from Offit Kurman, P.C. who represents Wickapogue 1 LLC in the Bankruptcy Action demanding that individual defendants vacate the premises by Midnight on March 30, 2023 and terminating representation of undersigned counsel as attorneys for Wickapogue 1 LLC.

Defendants now bring the instant Order to Show Cause, seeking to vacate the Clerk's Entry of Default and for a preliminary injunction enjoining the plaintiff and its assignees, affiliates, and representatives, including Offit Kurman, P.C. and Wickapogue Beach LLC from removing defendants Mark and Nicole Gallagher from the Subject Premises.

**LEGAL ARGUMENT**

    **A. Legal Standard to Vacate Entry of Default**

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Relief from default under Rule 55(c) is to be granted at the discretion of the court upon consideration of the individual circumstances of the case and the credibility and good faith of the parties. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). In determining a motion to vacate a default, the court focuses on three considerations with regard to the meaning of "good cause." These factors are: (1) the willfulness of the default; (2) the potential prejudice to the adversary; and (3) the presentation of a meritorious defense. *See Chalasani v. Chalasani,* 92 F.3d 1300, 1307 (2d Cir.1996) (citing *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987)); *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir.1996); *Enron Oil,* 10 F.3d at 96. Other equitable factors that may be considered include whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about an unfair result. *See Enron Oil,* 10 F.3d at 96.

The Second Circuit strongly prefers dispute determination on the merits and directs district courts to resolve any doubts regarding vacatur of a default in favor of a trial on the merits. *See Shah v. New York State Dept. of Civil Service,* 168 F.3d 610, 615 (2d Cir.1999); *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). Indeed, that Court has recognized that "dismissal is a harsh remedy to be utilized only in extreme situations." *Cody,* 59 F.3d at 15 (internal quotations omitted).

**a) Willfulness**

In *American Alliance,* the Second Circuit explained that a default caused by a filing mistake on the part of the defendant's in-house counsel is not "willful" for the purposes of cases interpreting Rule 60(b)(1). *See American Alliance,* 92 F.3d at 61. The rationale for this holding was that the Court "s[aw] no reason to expand [its] willfulness standard to include careless or negligent errors in the default judgment context." *Id.* The Second Circuit clarified its willfulness standard in *Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry,* 158 F.3d 631, 634–35 (2d Cir.1998), in which it held that "while a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted deliberately." *Id.*

Here the Defendants maintain that their default was not willful, and they attempted to respond to plaintiff's Order to Show Cause to appoint a receiver by their attorney, George Cavales, Esq. See letter filed on behalf of George Cavales, Esq as docket entry #18. Furthermore, the Defendants commenced an action in Supreme Court of Suffolk County on or about January 11, 2023 under index number 600746/2023 in an attempt to stop the sale of the subject property and membership interest of Nicole Gallagher in Wickapogue 1 LLC. While the endeavor was not ultimately successful, it does however highlight the defendants' attempt to defend their interests

5

in the subject property. They have also moved for a vacatur of the default prior to any entry of a judgment against them.

Thus, bearing in mind the strong preference for resolution of disputes on the merits, and the presence of a meritorious defense, that of criminal usury, Defendants respectfully request their default be vacated in this action.

**b) Prejudice**

There is no prejudice to the plaintiff if the default is vacated as they have not yet moved for judgment against the defendants. "The plaintiffs made the instant motion a few months after the default was entered. During that period, no evidence was or destroyed, and no witnesses became unavailable or lost their memory regarding pertinent events." *See Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983); *Time Warner Cable of N.Y. v. Cabada,* 1997 WL 797533, at *2 (E.D.N.Y.1997).

Furthermore, the Plaintiff in this action have not moved for a judgment of foreclosure and sale, and even if they did the subject property could not be rented, leased or sold since there is no certificate of occupancy for the property filed or obtained because of zoning issues. The defendants, on the other hand will be greatly prejudiced if the default is not vacated as they would not get a chance to assert the defense of criminal usury, the finding of which could mean the loan documents are null and void.

**c) Meritorious Defense**

The Second Circuit has stated that a "defense is meritorious if it is good at law so as to give the fact-finder some determination to make." *American Alliance,* 92 F.3d at 61. "Likelihood of success is not the measure. [Plaintiffs'] allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Keegel v. Key*

6

*West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 374 (D.C.Cir.1980); *see also Enron Oil,* 10 F.3d at 98. Weisel v. Pischel, 197 F.R.D. 231, 238–39 (E.D.N.Y. 2000).

Here, the moving defendants have a meritorious defense in that the interest rate applied in the Senior Loan, Building Loan, not to mention the requirement to pay the Exit Fee, Extension Fee and waiver of all claims and damages under the LMA rise to a level that is criminally usurious pursuant to the precedent set by the Court of Appeals in *Adar Bays, LLC v. GeneSYS ID, Inc*., 37 N.Y.3d 320 (2021) 179 N.E.3d 612, 157 N.Y.S.3d 800, 2021 N.Y. Slip Op. 05616. More importantly, the bid of the 100% membership interest of Wickapogue 1 LLC, which led to the filing of the chapter 11 bankruptcy action, stems from the pledge agreement, executed the same day as the loan documents and as set forth below, the value of the bid of the membership interest is taken into account to calculate the interest rate, which is higher than 25%. The assertion of the meritorious defense could mean that the bid for the membership interest of Wickapogue 1 LLC could be potentially deemed null and void, thus voiding the plaintiff's authority to commence the bankruptcy action.

**B. Criminal Usury**

A lender commits a class E felony when, without other legal authorization, the lender, "knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding [25%] per annum or the equivalent rate for a longer or shorter period." Penal Law § 190.40

In *Adar Bays, LLC v. GeneSYS ID, Inc*., the Court of Appeals certified held that usurious loan transaction are deemed void and unenforceable, resulting in the uncollectability of both principal and interest when the 25% interest rate cap set forth in Penal Law § 190.40—

incorporated by reference in General Obligations Law § 5–521(3)—applies to a loan to a corporation and the interest charged on the loan exceeds that cap.

While the defense of usury is not available to corporations, this bar does not preclude a corporate borrower from raising the defense of "criminal usury" (i.e., interest over 25%) in a civil action. Therefore, in the instant action the defendant entity, Wickapogue 1 LLC is not barred from raising the defense of "criminal usury." "Thus, loans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021).

The Court of Appeals in *Adar Bays, LLC v. GeneSYS ID, Inc.,* took into account, floating-price conversion options when calculating the interest rate and found the rate was higher than 25%. "Not surprisingly then, our cases involving criminal usury show strict attention to additional fees exacted sometimes creatively through loan instruments (see e.g. *Hammelburger,* 54 N.Y.2d at 594, 446 N.Y.S.2d 917, 431 N.E.2d 278 [remanding for further fact finding as to the status of a $2,100 fee, charged in addition to 24% interest on a loan, and that the lender argued was a finder's commission]. Exchanges of other forms of property, substituted for money, are equally germane to the calculation (see *Schermerhorn v American Life Ins. & Trust Co., 14 Barb*. 131, 147 [N.Y. Sup. Ct. 1852], mod on other grounds sub nom *Schermerhorn v Talman*, 14 N.Y. 93 [1856] ["it is evident that the things substituted for, and loaned as money, must be truly estimated and valued at their money value"]). Just like the Court of Appeals used the floating-price conversion options, the Court in this action should consider the bid of the membership interest of Wickapogue 1 LLC when calculating the interest rate as a an "exchange of other form of property, substituted for money." The bid is not so speculative that a monetary

8

value cannot be assigned to it, the inclusion of which will surpass 25%. The default of the Defendants should thus be vacated in order to give them a chance to assert this defense.

In the instant action, the Senior Loan which was for a principal amount of $3,250,000.00 ("Senior Loan") and the Building Loan which was for a principal amount of $2,500,000.00 both charged a default rate of 24% and also charged the Defendant entity, Wickapogue 1 LLC, $115,000.00 as an 'exit fee' upon payment of principal or disposition of property. Defendant Nicole Gallagher also executed a Pledge Agreement, wherein the Lender required her to secure the Loans by guaranteeing her membership interest in Wickapogue 1 LLC. In addition, when the Defendants executed the LMA to extend the maturity date till October 1, 2021, the LMA required them to pay an extension fee in the amount of $53,992.19 and waive any and all claims, demands, causes of action, obligations, damages, costs, penalties and liabilities of any nature against the Lender. The additional fees and waiver of "and all claims, demands, causes of action, obligations, damages, costs, penalties and liabilities" constitutes the plaintiff "knowingly charging taking or receiving any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding [25%] per annum or the equivalent rate for a longer or shorter period." Penal Law § 190.40

To determine whether a transaction is usurious, courts look not to its form but to its substance or real character (see *O'Donovan v. Galinski,* 62 A.D.3d 769, 769–770, 878 N.Y.S.2d 443 [2d Dept. 2009] ). If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower's control, the contingent payment constitutes interest within the meaning of the usury statutes (see *Diehl v. Becker*, 227 N.Y. 318, 326, 125 N.E. 533 [1919]; *Browne v. Vredenburgh*, 43 N.Y. 195, 198 [1870] ). *Blue Wolf Capital Fund II,*

9

*L.P. v. American Stevedoring Inc.*, 105 A.D.3d 178 (2013) 961 N.Y.S.2d 86, 2013 N.Y. Slip Op. 01483.

The standard formula for calculating an effective interest rate in usury cases is set forth in *Band Realty Co. v. North Brewster, Inc.*, 37 N.Y.2d 460, 462, 373 N.Y.S.2d 97, 335 N.E.2d 316 [1975]. Using the formula in the instant action, the aggregate principal amount owed in the instant action is $5,299,218.86. The LMA also charges the Borrower an extension fee of $53,992.19. The note interest rate stated was 9.25% which equals to $490,177.75 plus the loan funds retained by the Lender that are deemed to be interest are $53,992.19 which totals $544,169.94. The net loan funds the borrower received at closing was $4,421,700.86 as the lender held back $877,518. *See Declaration of Mark Gallagher for more details*. Therefore, the interest payments as a percentage of the net loan funds are $1,421,687.94 ($490,177.75 + $53,992.19 + $877,518.00) which equals 32.15% of $4,421,700.86 (see id. at 462, 373 N.Y.S.2d 97, 335 N.E.2d 316). The effective rate of interest for the demand loan, 32.15%, exceeds the legal rate of 25% and the defendants have a valid and meritorious defense of criminal usury in this action.

Even if the Court were to utilize the payoff figures from the Plaintiff, as of March 3, 2023, it would still find that an interest rate higher than 25% was used. In the letter dated March 3, 2023, the unpaid principal is listed as $5,299,218.86, the note interest rate is 9.25% which equals $748,882.75, the default interest rate from 10/2/21 to 3/10/223 is 14.75% which equals $1,126,856.78. The payoff also includes 'accrued/unpaid interest due in the amount of $3,456.13, and unpaid loan charges or advances in the amount of $184,613.01. As the precedent set by the Court of Appeals in *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021), the additional amounts must be included when calculating the interest, which brings the interest

amount to $2,063,808.67 which equals to 39.46% of $5,299,218.86. Even by plaintiff's owns payoff figures, the interest rate is higher than 25%.

In any event, several more recent New York cases have held that, where a contract provision allows collection of interest at "the highest interest permitted under the law," New York's criminal usury cap applies to prevent a creditor from collecting interest above 25% even in default. See 815 *Park Ave. Owners Corp. v. Lapidus*, 227 A.D.2d 353, 643 N.Y.S.2d 89, 90 (1st Dep't 1996); *Stein v. Am. Mortg. Banking*, Ltd., 216 A.D.2d 458, 628 N.Y.S.2d 162, 164 (2d Dep't 1995); *Emery v. Fishmarket Inn of Granite Springs*, 173 A.D.2d 765, 570 N.Y.S.2d 821, 824 (2d Dep't 1991); *Nextbridge Arc Fund, LLC v. Vadodra Prop.*, LLC, 31 Misc.3d 1202(A), 929 N.Y.S.2d 201, 2011 WL 1124347, at *3 (Sup. Ct. Queens Cty. Mar. 11, 2011) (citing Emery, 570 N.Y.S.2d 821). One decision held outright that the interest on a defaulted mortgage above 25% was "a criminally usurious rate." See *Emigrant Funding Corp. v. 7021 LLC*, 25 Misc.3d 1220(A), 901 N.Y.S.2d 906, 2009 WL 3530022, at *4 (Sup. Ct. Queens Cty. Oct. 26, 2009). These cases are strong indicators that New York's criminal usury cap applies even to defaulted obligations. *Madden v. Midland Funding*, LLC, 237 F. Supp. 3d 130, 142 (S.D.N.Y. 2017)

General Obligations Law § 5–511(1) provides that all loans charging an interest rate greater than that permitted in section 5–501 "shall be void." A criminally usurious rate higher than 25% is an interest rate greater than the civil usury limit of 16% prescribed in section 5–501. The legislature provided no exceptions to the voiding of usurious loans if the borrower is a corporation. Rather, the General Obligations Law treats corporate borrowers differently only to the extent that corporate borrowers may raise criminal usury, but not civil usury, as a defense. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021).

11

The Court of Appeals in *Adar Bays, LLC v. GeneSYS ID, Inc* has set a precedent when calculating usurious interest rates, which is applicable here as demonstrated above.

The defendants have demonstrated that they have a meritorious defense of criminal usury, and it would be a grave injustice if they are not allowed to vacate the default and assert the defense against the plaintiff.

### C. Legal Standard for a Preliminary Injunction

Finally, the moving defendants request that the Court grant a preliminary injunction so as to enjoin and restrain the Plaintiff, its counsel, affiliates, subsidiaries, assignees, entities and individuals acting on its behalf, including Wickapogue Beach LLC from removing the Defendants especially Mark Gallagher and Nicole Gallagher from the subject premises.

On or about February 17, 2023 an auction was held and the plaintiff secured a bid for 100% membership interest of Wickapogue 1 LLC, and it then assigned all its rights to Wickapogue Beach LLC, which entity then filed for chapter 11 bankruptcy for Wickapogue 1 LLC on or about March 28, 2023, and sent a demand to vacate letter to the Movants on March 29, 2023, stating they have to vacate the premises by midnight on March 30, 2023. The plaintiff is clearly trying to forcibly remove the Defendants from the subject premises and sell the subject property without seeking a judgment of foreclosure and sale. If the preliminary injunction is not granted the Defendants will be irreparably harmed as they will not have a chance to assert the defense of criminal usury.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2948 (2d ed. 1995) ). "A plaintiff seeking a

12

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Defendants have demonstrated that they have meritorious defense of criminal usury, and they are likely to succeed on the merits, as shown by the calculations above.

The plaintiff in this action, through its assignee, Wickapogue Beach LLC, filed for bankruptcy and sent a letter dated March 29, 2023, to the Defendants asking them to vacate the subject premises. Their actions stem from the default of the defendants but if the default is vacated, the defendants have a chance to assert the defense of criminal usury. If the Court finds for the defendant, the loan documents, including the pledge agreement can be deemed null and void, since the interest rate was calculated at an interest rate higher than 25%. If the sale of the 100% membership interest is overturned and reverted back to Nicole Gallagher, then the plaintiff or its assignee will not have any authority or right to act on behalf of Wickapogue 1 LLC. However, if the injunction is not granted then the defendants will be irreparably harmed as the plaintiff will proceed with seeking an Order to remove them from the premises and force the sale of the subject premises via the bankruptcy action.

**CONCLUSION**

The Defendants have demonstrated a meritorious defense in this action against the plaintiff, that of criminal usury. If they prevail, pursuant to the precedent set by the Court of Appeals in *Adar Bays, LLC v. GeneSYS ID, Inc,* the Senior Loan, and Building Loan will be deemed null and void and so will any resulting action taken by the plaintiff that stemmed from the enforcement of the two loans, specifically auctioning the membership interest of Wickapogue

13

1 LLC pursuant to the Pledge Agreement. The Defendants therefore request that the default be vacated so they can asset the defense of criminal usury and that the request for a preliminary injunction be granted. If it is not granted, the plaintiff will be successful in proceeding with removing the defendants from the subject premises and selling the subject property, which would irreparably harm the defendants as once that is done it cannot be undone.

14